Filed 7/22/22 Elizondo v. Dept. of Transportation CA3

<u>NOT</u> <u>TO</u> <u>BE</u> PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

|  |  |
|---|---|
| RACHEL A. ELIZONDO, | C088987 |
| Plaintiff and Appellant, | (Super. Ct. No. STK-CV-UOE-2013-0006188) |
| v. | |
| DEPARTMENT OF TRANSPORTATION, | |
| Defendant and Respondent. | |

Plaintiff Rachel A. Elizondo won a jury verdict of $605,000 on her employment discrimination and retaliation claims against defendant Department of Transportation. Because plaintiff was the prevailing party in the case, the trial court awarded over $700,000 in attorney fees for her counsel, John A. Shepardson, and over $117,000 in costs. Plaintiff contends the trial court abused its discretion in making that award.

1

Regarding attorney fees, we agree with plaintiff that the trial court abused its discretion by calculating Shepardson's fees based on a local hourly rate, rather than an out-of-town rate. We reject plaintiff's other challenges to the attorney fee award, including her challenge to the number of reasonable hours Shepardson spent on the case and the lodestar multiplier of 1.2. Regarding costs, we affirm in all respects, except for the trial court's articulation of the sum of the costs awarded.[1]

Accordingly, we will reverse in part the order on appeal and remand the matter to the trial court for further consideration.

## BACKGROUND

In 2009, plaintiff was working in Stockton for defendant when she saw e-mails intended for some of her male coworkers that contained sexually explicit content. Believing it was her "responsibility to report something like that," plaintiff told her supervisor.

In June 2013, plaintiff filed a civil complaint alleging defendant harassed, and discriminated and retaliated against her because of the 2009 e-mail incident.

In May 2017, plaintiff filed a second amended complaint containing five causes of action against defendant: (1) violation of the California Whistleblower Protection Act (Gov. Code, § 8547; hereafter WPA); (2) retaliation in violation of title 42 United States Code section 2000e-3(a) (Title VII); (3) retaliation in violation of the California Fair Employment and Housing Act (Gov. Code, § 12940, subd. (h); hereafter FEHA); (4) failure to prevent retaliation in violation of the FEHA (Gov. Code, § 12940, subd. (k)); and (5) wrongful termination in violation of Labor Code sections 98.6 and 1102.5.

---

[1] This matter was assigned to the panel as presently constituted in June 2022.

2

In November 2017, after a 26-day jury trial, the jury found defendant violated plaintiff's rights under Title VII and the FEHA (the second, third, and fourth causes of action) and awarded $605,000 in damages.

*Pleadings on Attorney Fees and Costs*

In March 2018, invoking the FEHA's attorney fee provisions[2] (and other statutes), plaintiff sought attorney fees and costs as the prevailing party in her case. Plaintiff asked for over $4,000,000 in fees for her attorney John A. Shepardson.[3] Shepardson filed a supporting declaration, explaining that: (i) he was "past president of the Santa Clara County Trial Lawyers Association," and his office was in Los Gatos, California; (ii) he represented plaintiff pursuant to an "extremely high risk" fee agreement, wherein plaintiff agreed to pay him "$125/hr. . . . and a 22.5% contingency fee," even though his "usual hourly rate" was "between $250 to $350"; (iii) the "Bay Area market rate for the services [he] rendered" was "$825/hour";[4] (iv) the case presented a "number of novel and/or difficult issues"; (v) he was "precluded from working on other cases that could have generated substantially more than rates" he charged plaintiff; and (vi) the case benefitted the public interest, as it "exposed systemic government corruption."

Plaintiff's first declaration in support of attorney fees and costs detailed her efforts to obtain counsel. She explained: (1) she "first contacted local trial lawyer Charles Pacheco," but he "declined to take the case based on lack of evidence"; (2) Attorney David Rishwain "declined to take the case because employment law was not his area of

---

[2]     Government Code section 12965, subdivision (c)(6), provides in relevant part: "In civil actions brought under this section, the court, in its discretion, may award to the prevailing party . . . reasonable attorney's fees and costs, including expert witness fees . . . ."

[3]     Over 2,000 hours of work at $825 an hour, with a multiplier of 2.5.

[4]     Attached as exhibits to this declaration were declarations from Bay Area employment law attorneys that addressed the market rates for their work.

expertise"; (3) "local attorney Gary Davenport" "did not do employment law," and "recommended [plaintiff] hire a Bay Area employment lawyer." After two attorneys in the San Francisco Bay Area declined to represent plaintiff, she hired Shepardson.

In an April 2018 opposition, defendant challenged plaintiff's claimed hourly *rate*, because "it ignore[d] plaintiff's counsel's normal and customary hourly rate of $250-$350 per hour." The "claimed rate" of "$825 per hour" was "wholly unsupported and without foundation." Further, an analysis of "the prevailing Bay Area legal rates" was "irrelevant" and "not implicated," since it was "know[n] with precision what . . . Shepardson's normal customary market rate [was] . . . ."

Defendant also argued that plaintiff "fail[ed] to show any serious good faith effort to secure local counsel," as she "apparently contacted three attorneys in San Joaquin County who all informed her that they do not practice in employment law. This level of inquiry is not exhaustive and fails to show that plaintiff was precluded from retaining local counsel."

Regarding the *number* of attorney hours, defendant argued the "hours claimed by plaintiff's counsel [we]re inflated . . . ." Defendant asserted the "reasonable hours necessarily expended" in the case (about 250 fewer hours than Shepardson claimed) multiplied by Shepardson's hourly rate of $250, lead to a "just and reasonable" attorney fee award of around $400,000.

A declaration of a senior legal analyst, filed in support of the opposition, disputed the "reasonable amount of attorney fee hours" and identified over $118,000 in "improper" costs.

Plaintiff filed a reply memorandum, reply declarations, and objections to the declaration that supported defendant's opposition.

*April 2018 Hearing*

At an April 2018 hearing, the trial court asked plaintiff's counsel to produce "if it's feasible, a type of a spreadsheet." The trial court explained that "in light of the

4

voluminous items . . . [it] need[ed] to rule on, . . . if [it was] going to deny a particular item, then [it] need to state . . . reason[s] . . . for that," because "the [a]ppellate [c]ourt wants to see [the] reason[s]."

A spreadsheet could facilitate the trial court's analysis of plaintiff's requests for fees and costs, the trial court explained, because the document would have separate columns for plaintiff's counsel work, defendant's objections to a particular item, and the trial court's ruling on each item.

Regarding the question of the relevant hourly rate, the trial court told the parties:

"[T]here are some cases that . . . would support a rate by somebody outside the county or some other declarations as to whether there's anybody in the county that can do that work at a different rate.

"And I -- I probably would like more guidance. I mean, I did read Mr. Shepardson's declaration with regard to what his expert has said would be relevant rates, but . . . [that] dealt with rates that were awarded out of this county. . . .

"So, I think that's certainly a significant decision I have to make as to what the reasonable rate is in the relevant community . . . .

"And I know from my experience as a civil judge that there are attorneys who do those, that type of litigation. I know -- I mean, I can think of at least two firms that do that at this point.

"But if you don't give me that information, I'm supposed to use my knowledge as a judge to determine the relevant community rate, and I don't know -- I haven't gone outside and made an ex parte inquiry of local attorneys. I think that's probably improper. . . .

"So I'm not sure the appellate courts are clear as to what inquiry I could make. I'm not going to make a separate inquiry, certainly on an ex parte basis, unless you both want to allow me to do that. . . . If you don't both allow me to ask local attorneys, do they do this type of litigation, what do they charge, I'm not going to make that inquiry."

5

Plaintiff's counsel, Shepardson, replied: "I don't have any problem . . . if the Court wants to make that inquiry to local attorneys as to what the local rate is. [¶] It's our position, because Ms. Elizondo . . . made a good faith effort to get local counsel and wasn't able to, . . . that the Bay area rates apply. That's why we didn't provide the evidence of local rates, because in our view they didn't apply."

Defense counsel requested the trial court *not* conduct that inquiry, saying: "there is no need to go to the prevailing rates, and that's our argument in the brief . . . because we're not contesting it. [¶] I agree, if we were contesting Mr. Shepardson's claimed market rates, there would be a need to establish whether it was reasonable or not. The problem or the focus of our objection to this claim is that the rate that he is seeking to be compensated at is not his market rate and it has [no] bearing to the market rate that Mr. Shepardson normally charges."

*Further Pleadings on Attorney Fees and Costs*

In June 2018, plaintiff filed (a) her supplemental declaration regarding her efforts to obtain local counsel, (b) declarations by attorneys that plaintiff contacted before she hired Shepardson, and (c) spreadsheets along the lines the trial court requested at the April 2018 hearing (with empty columns for defendant's responses, and the trial court's rulings). The costs spreadsheet contained over 100 items and the fees spreadsheet for Shepardson's hours contained over 750 items.

In her supplemental declaration in support of attorney fees and costs, plaintiff explained that at least three attorneys in Stockton and two attorneys in Sacramento County declined to take her case. One Stockton attorney who declined to represent her "recommended [she] hire a Bay Area employment lawyer." Two Bay Area attorneys declined to represent her, but Shepardson agreed to represent her "only . . . if there was a hybrid hourly/contingency fee agreement." Shepardson "refused" to "take [her] case on a contingency fee basis," and was the only attorney she spoke with who "mentioned a hybrid hourly/contingent fee."

6

Plaintiff also explained that she contacted (i) "the Stockton [l]aw [f]irm of Mayall Hurley . . . about taking [her] case" and (ii) a Modesto law firm about her case. She spoke with a "case intake person" at each firm, but no one from either firm called her back.

Plaintiff "estimate[d] [she] spent 60-70 hours looking for a local lawyer to take [her] case."

One attorney who provided a supporting declaration was civil litigator David Rishwain, who explained: (i) he had been practicing law out of an office in Stockton since 1995; (ii) the "majority of [his] practice involve[d] matters venued in San Joaquin County"; (iii) in 2009, he spoke with plaintiff about a potential lawsuit against defendant "regarding sexual harassment and retaliation"; (iv) at that time, he knew plaintiff's husband, who "was and for many years had been the landscape maintenance contractor for the building where [Rishwain] maintained [his] law office"; (v) ultimately, he declined to represent plaintiff, "because [he] did not feel [he] had the necessary experience handling cases such as hers."

Attorney Douglass F. Penney (with an office in Elk Grove [Sacramento County]) declared: (i) he had been "handling workers['] compensation cases for 41 years"; (ii) he represented plaintiff in workers' compensation cases against defendant; (iii) plaintiff asked him in 2012 or 2013 to represent her in a civil action against defendant; (iv) he declined to represent plaintiff, at least in part because his law firm "did not handle civil cases on a contingency fee basis."

Attorney Charles Pacheco declared that: (i) "including employment cases," he had been "trying civil and criminal cases for over 30 years" "up and down the Central Valley of California, including in San Joaquin County Superior Court"; (ii) his office was in Sacramento; (iii) plaintiff contacted him in 2013 about representing her in "her case against" defendant; (iv) he knew plaintiff from "dealings with her when she was a

7

hearing officer for the DMV";[5] (v) he declined to take plaintiff's case because of a "lack of available evidence to prove up her case."

Stockton Attorney Gregory R. Davenport, declared: (i) he had been "litigating and trying civil cases for over 26 years"; (ii) plaintiff contacted him sometime between 2009 and 2013 about representing her "in her employment retaliation against" defendant; (iii) he "declined to take her case because [he] [did not] handle employment retaliation cases"; (iv) given plaintiff's circumstances "and [his] own assessment of employment lawyers in the local area and Bay Area, [he] suggested [plaintiff] hire a Bay Area lawyer."

Defendant's supplemental opposing documents included three declarations by Stockton attorneys regarding prevailing local hourly rates for attorneys in employment cases. Two declarations described a local rate of $300 to $325 per hour for employment cases. The third declaration described a rate of $190 to $365 per hour.

Defendant also filed an updated version of the spreadsheets generated and filed by plaintiff in her supplemental pleadings, with defendant's objections (if applicable) to each item. The spreadsheet with defendant's objections to Shepardson's hours ran 260 pages.

In August 2018, plaintiff responded to defendant's objections.

On August 27, 2018, the trial court ordered: "Briefing is closed. Further filings as to the [m]otion for [a]ttorney [f]ees and [c]osts are untimely."

In November 2018, plaintiff filed a motion "to [a]llow [f]iling of [n]ew [e]vidence" in support of her motion for attorney fees and costs.

---

**5**      Plaintiff testified at trial that she previously worked as a "[d]river [s]afety [h]earing [o]fficer," "conduct[ing] [a]dministrative hearings that had to do with individuals that had the[ir] license suspended or revoked for various reasons."

8

In December 2018, the trial court issued a tentative ruling, explaining that because plaintiff "could have obtained local counsel had she made a good-faith inquiry," the *local* prevailing rate of $350 per hour was appropriate for the attorney fee award.

*December 2018 Hearing*

At oral argument, when Shepardson maintained that plaintiff made a "good faith effort" to find local counsel, the trial court replied: "She made an effort. I don't think she made a good faith effort."

The court wondered aloud, "why would [plaintiff] contact a workers' comp attorney or other attorneys who didn't even do employment law?" Plaintiff's counsel replied: "Well, she's a layperson, and he was a workers' comp attorney for her."

The trial court also observed that Attorney David Rishwain said in his declaration that he did not "handle employment litigation."

When Shepardson asked the trial court if it thought plaintiff "should have contacted five or six employment" attorneys, the trial court replied: "I'm not going to put a number on it. [¶] . . . [¶] . . . I don't think she made a good faith effort. I think probably the premier[ ] firm who does this here," "Mayall Hurley who she called and they never called back. I know they handle dozens and dozens of these cases, many of them in front of me, and I know what they charge, and I don't think that was a good faith effort because that's the name she would have gotten had she made a good faith effort."

"But she did call them," plaintiff's counsel responded.

"A good faith effort would have been to call back, okay, and find out," the trial court replied. "[Y]ou just don't make a phone call and leave a message and then walk away. I don't think that was a good faith effort, okay, overall, okay?" "Do you know that there's 700 attorneys in San Joaquin County? About 450 belong to our Bar Association, so I think there are attorneys that do this type of litigation that, had she made a good faith effort, she would have been able to find out more about them. [¶] That

9

might have made the difference for me, but I don't think she made a good faith effort here. She made a perfunctory effort."

Regarding Shepardson's hours and plaintiff's costs, the trial court explained that it "looked at absolutely every entry," "every objection," "every reply information and declaration, which was thousands of pages. It took me a long time. I went through every item."

Regarding Shepardson's hours, for each item the trial court "delineated a particular number of hours that [it] thought were reasonable for that item, and if [it] reduced [the hours], [the trial court] took notes to [it]self as to why [it] reduced that particular item." The trial court "went through every item independently. [It] then added up the items, the number of hours that [it] thought were reasonable that were not duplicative, that were necessary."

For example, the trial court told Shepardson it "did reduce some hours" for his lack of preparation and organization at trial, explaining: "I was very disappointed that you seemed to be unprepared each day as you came in. When we'd start at the beginning of the session and I'd say resume, you'd be flipping through your book to find certain exhibits, and you couldn't find them, and it looked to me like you were just unprepared. You hadn't prepared for that day's session despite claiming that you spent six or eight hours after court preparing for the next day. You weren't organized."

The trial court also disallowed some hours Shepardson claimed that "weren't attributable to this case and had to do with political activity, contacting legislature, writing articles . . . ."

*The Written Ruling*

In January 2019, the trial court filed its ruling on the motion for attorney fees and costs, awarding over $700,000 in fees to Shepardson (at a rate of $350 an hour) and $117,488.60 in costs.**6**

Regarding the *number* of hours, the trial court found "the sum of allowable hours . . . totaled 1,733.5." (Boldface & underscoring omitted.) The trial court: (i) "awarded [p]laintiff all hours that were reasonably incurred," including "reasonable" travel time, but did *not* award for hours spent (a) on "travel to and from routine case management conferences which could have been handled more economically by Court Call," (b) "[c]onferring with a client about newspaper articles of general interest," (c) on "duplicative or unreasonable" tasks, such as "[e]xcessive and duplicative time for organizing documents . . . especially in light of Mr. Shepardson's presentation at trial" and relatively "[in]efficient[ ]" "organiza[tion] and prepar[ation]," or (d) on "ministerial tasks" that "non-attorney staff" could have "more economically . . . accomplished"; (ii) took "judicial notice of certain records of the court proceedings and . . . considered its own observations of the progress of the litigation and the documents filed and presentations in court," including that Shepardson "to some extent over-litigated th[e] case"; (iii) "considered each item individually and in context," "not allow[ing]" some items "due to the subject matter, such as" (a) hours "devoted solely to administrative proceedings which are not allowed *K.I. v. Wagner* (2014) 225 Cal.App.4th 1412, 1415-1426, when not intertwined with the civil litigation" or (b) hours spent "study[ing] . . . pornography laws."

As for the appropriate hourly *rate*, the trial court explained it was concerned with "prevailing rates for litigation in the San Joaquin County area," not the San Francisco

---

**6** The trial court also ordered smaller attorney fees awards to others who worked on plaintiff's case. Those awards are not material to this appeal.

Bay Area. "Fees charged in the San Francisco Bay Area carr[ied] limited weight," because plaintiff failed to meet "her burden of showing that hiring local counsel was impracticable." The trial court explained: Plaintiff "made no reasonable good-faith effort to retain local counsel. [She] made no more than a cursory effort by contacting local attorneys who clearly did not handle employment cases. Rather than looking on the [I]nternet or asking attorneys for a referral, she prematurely decided that she would hire Mr. Shepardson who happened to be willing to represent her."

The trial court continued: "San Joaquin County lists approximately 700 attorneys and has an active [l]awyer [r]eferral [s]ervice. This judicial officer, who is also the supervising civil judge, has employment cases filed in his department on a regular basis by local attorneys. There are law firms that handle dozens of such cases. This judicial officer finds that it would not have been impracticable to find a local attorney willing and able to handle this case."

In addition to its own experience, the trial court referenced "the declarations filed by [d]efendant," which had "sufficient weight to persuade the [trial] court that there [was] a realistic indication that [plaintiff] could have obtained local counsel had she made a good-faith inquiry."

The trial court chose a rate of $350 per hour, "near the high end of" "the range suggested by most local attorneys."

On the question of a *multiplier*, the trial court noted that it considered: (a) "whether the demands of the case substantially precluded" Shepardson from other work; (b) "that a failure to fully compensate for the risk in bringing even a meritorious case would effectively immunize . . . defendants from being held to answer for" violations of law; and (c) "factors such as the novelty and difficulty of the questions involved and the skill displayed in presenting them."

The trial court determined: (a) Shepardson "failed to substantiate that representation . . . substantially precluded other work"; (b) the hybrid contingency nature

12

of the representation agreement "substantially reduced" Shepardson's risk in bringing the case, militating in favor of a "lower multiplier"; (c) "the issues involved in the case were not new" (as the case "primarily involved" witness credibility determinations by the jury "and weighing the persuasive effect of the evidence"); and (d) Shepardson "frequently displayed a lack of preparation and . . . disorganiz[ation]" and did *not* show "exceptional skill" in litigating the case.

"Taking the case on a contingent fee basis is a significant factor, combined with the delay in compensation, to justify a positive multiplier" of 1.2, the trial court concluded.

Other relevant rulings the trial court made were that plaintiff's "untimely" November 2018 filing was "den[ied]," and that attorney fees were *not* awarded pursuant to Code of Civil Procedure section 1021.5,[7] as plaintiff did not meet her burden of "proving a significant benefit . . . for members of the public," because "[a]ll damages were requested for [p]laintiff alone," and there "was no claim for injunctive relief which may have conferred a benefit on the general public."

---

[7] That law provides, in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

13

DISCUSSION

I

*Background Legal Principles*

A

"Except as provided by statute or agreement, each party to a lawsuit must ordinarily pay his or her own attorney's fees." (*Glaviano v. Sacramento City Unified School Dist.* (2018) 22 Cal.App.5th 744, 750 (*Glaviano*).)

"Through an attorney fee award, the FEHA encourages private counsel to vindicate the right of an employee to work in an environment free from unlawful discrimination. (See *Flannery v. Prentice* (2001) 26 Cal.4th 572, 583 [' " 'Without some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible' " ']; *Cummings v. Benco Building Services* (1992) 11 Cal.App.4th 1383, 1387 ['the purpose behind the [attorney] fee provision was to make it easier for a plaintiff of limited means to bring a meritorious suit'].)" (*Caldera v. Department of Corrections & Rehabilitation* (2020) 48 Cal.App.5th 601, 606-607 (*Caldera*).)

"In statutory fee-shifting cases, in which the prevailing party is statutorily authorized to recover his or her attorney's fees from the losing party, the lodestar method is the primary method for establishing the amount of recoverable fees. [Citations.] Under the lodestar method, the trial court must first determine the lodestar figure -- the reasonable hours spent multiplied by the reasonable hourly rate -- based on a careful compilation of the time spent and reasonable hourly compensation of each attorney involved in the presentation of the case. (*Ketchum* [*v. Moses* (2001)] 24 Cal.4th [1122,] 1131-1133.)" (*Glaviano*, *supra*, 22 Cal.App.5th at pp. 750-751.)

"The reasonable hourly rate is that prevailing for private attorneys in the community conducting noncontingent litigation of the same type." (*Glaviano*, *supra*, 22 Cal.App.5th at p. 751.)

14

"The relevant 'community' is that where the court is located." (*Altavion, Inc. v. Konica Minolta Systems Laboratory, Inc*. (2014) 226 Cal.App.4th 26, 71; *MBNA America Bank, N.A. v. Gorman* (2006) 147 Cal.App.4th Supp. 1, 13 ["determination of market rate is generally based on the rates prevalent in the community where the services are rendered, i.e., where the court is located"].)

But "in the unusual circumstance that local counsel is unavailable" or "hiring local counsel was impracticable," the trial court may use the rate of counsel from a higher fee market in determining a reasonable hourly rate. (*Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 399.)

To show that hiring local counsel was impracticable, thereby permitting use of higher rates for out-of-town counsel, a party must show " ' "a good-faith effort to find local counsel." ' " (*Environmental Protection Information Center v. Department of Forestry & Fire Protection* (2010) 190 Cal.App.4th 217, 249 (*Environmental Protection*) ["Like the court in *Horsford* . . . 'we doubt a plaintiff needs to make anything more than "a good-faith effort to find local counsel" [citation] in order to justify the fees of out-of-town counsel' "].)

Whichever geographic locus the trial court uses, "[t]he prevailing hourly rates apply ' " 'regardless of whether the attorneys claiming fees charge[d] nothing for their services, charge[d] at below-market or discounted rates, represent[ed] the client on a straight contingent fee basis, or are in-house counsel. [Citations.]' [Citation.]" ' [Citations.]" (*Glaviano, supra*, 22 Cal.App.5th at p. 751.)

" 'The court may rely on its own knowledge and familiarity with the legal market in setting a reasonable hourly rate.' [Citation.]" (*Nishiki v. Danko Meredith, P.C.* (2018) 25 Cal.App.5th 883, 898 (*Nishiki*).) "The courts repeatedly have stated that the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom [citation], and this includes the determination of the hourly rate that will be

15

used in the lodestar calculus." (*569 East County Boulevard LLC v. Backcountry Against the Dump, Inc*. (2016) 6 Cal.App.5th 426, 437.)

"After determining the lodestar, the trial court may adjust the lodestar figure based on factors including, but not limited to (1) the novelty and difficulty of the questions involved, (2) the skill displayed in presenting them, (3) success or failure, (4) the extent to which the nature of the litigation precluded other employment by the attorneys, (5) the contingent nature of the fee award, (6) that an award against the state would ultimately fall upon the taxpayers, (7) that the attorneys in question received public and charitable funding for the purpose of bringing lawsuits of the character here involved, and (8) that the monies awarded would inure not to the individual benefit of the attorneys involved but the organizations by which they are employed. [Citations.] The lodestar adjustment method 'anchors the trial court's analysis to an objective determination of the value of the attorney's services, ensuring that the amount awarded is not arbitrary.' [Citation.]" (*Glaviano*, *supra*, 22 Cal App.5th at p. 751.)

B

" ' " 'On review of an award of attorney fees after trial, the normal standard of review is abuse of discretion.' " ' [Citation.] ' " 'The trial court's decision will only be disturbed when there is no substantial evidence to support the trial court's findings or when there has been a miscarriage of justice. If the trial court has made no findings, the reviewing court will infer all findings necessary to support the judgment and then examine the record to see if the findings are based on substantial evidence.' [Citation.]" [Citation.]' [Citation.]" (*Nishiki*, *supra*, 25 Cal.App.5th at p. 895.)

"A trial court abuses its discretion when it applies the wrong legal standards applicable to the issue at hand." (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 85; see *Conservatorship of Bower* (2016) 247 Cal.App.4th 495, 506 ["getting the legal standard wrong means that a subsequent decision becomes itself a per se abuse of discretion even if, assuming the wrong standard, the decision is otherwise reasonable"].)

16

C

"It is a fundamental rule of appellate review that the judgment appealed from is presumed correct and ' " 'all intendments and presumptions are indulged in favor of its correctness.' " [Citation.]' [Citation.]" (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Thus, it is an appellant's burden to demonstrate reversible error by presenting "an adequate argument including citations to supporting authorities and to relevant portions of the record." (*Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 557.) "When an appellant's brief makes no reference to the pages of the record where a point can be found, an appellate court need not search through the record in an effort to discover the point purportedly made. [Citations.] We can simply deem the contention to lack foundation and, thus, to be forfeited. [Citations.]" (*In re S.C.* (2006) 138 Cal.App.4th 396, 406-407; see *Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246 [" '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived' "].)

Further, because it is not the responsibility of an appellate court to "act as counsel for [a party] and attempt to arrange [their] arguments coherently," "failure to provide coherent organization to . . . arguments forfeits consideration of those arguments on appeal." (*Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 181.)

17

An appellant also forfeits arguments raised for the first time in a reply brief that could have been raised in the opening brief.[8] (Hurley v. Department of Parks & Recreation (2018) 20 Cal.App.5th 634, 648, fn. 10.)

II

*Hourly Rate and Plaintiff's "Good-faith" Effort to Retain Local Counsel*

Plaintiff argues the trial court erred in concluding she did not make a good-faith effort to retain local counsel. On the proper application of the standard, plaintiff contends the "lens" through which the question of her good faith should be viewed "is through her eyes"—i.e., the eyes of someone who was "not [a] trained lawyer and . . . judge," like the trial court. On the facts, plaintiff contends the trial court "failed [to] recognize that [plaintiff] contacted multiple local attorneys" who "rejected her case . . . and/or recommended Bay Area attorneys."

Defendant argues the trial court did not err, as it was "in the best position to know the state of the local litigation bar and the result of a good faith effort to find local counsel." Further, defendant argues, plaintiff "provided no evidence showing that she approached any local attorneys with a blended rate proposal once she learned of such an option. Local counsel was not . . . given an opportunity to compete for the case on the same compensation terms as . . . Shepardson . . . ."

We conclude the trial court abused its discretion on this issue by (1) applying an incorrect standard in analyzing the question of her good faith in seeking to retain local counsel, (2) relying on its own knowledge and experience beyond the permissible limits

---

[8] Accordingly, we do not consider plaintiff's claim that the trial court abused its discretion by denying her untimely November 2018 filing, because though this issue was referenced in the opening brief as a "question presented," plaintiff provided argument on the issue only in her reply brief.

Any other arguments by plaintiff not discussed in this opinion are deemed forfeited.

contemplated by the case law, and (3) making findings unsupported by substantial evidence in the record.

*Case Law*

"In *Horsford*, the Court of Appeal held the trial court abused its discretion in using local Fresno rates in calculating the lodestar amount where the plaintiff submitted an uncontradicted declaration stating he unsuccessfully attempted to retain local employment law attorneys to represent him before hiring out-of-town counsel from San Francisco. The court explained: 'This evidence was overwhelming and uncontradicted; it simply provides no basis for the court's conclusion that "there is no adequate showing that it was impossible or even unusually difficult to find a local attorney to take the case." . . .' [Citation.]

"Similarly, in *Center for Biological Diversity v. County of San Bernardino* (2010) 188 Cal.App.4th 603, the Court of Appeal held the trial court abused its discretion in using local San Bernardino rates in calculating the lodestar amount where 'the only evidence on the issue of availability of local counsel showed plaintiffs' need to retain out-of-area counsel.' [Citation.] That evidence was a declaration from one of the plaintiffs in the action. The declarant stated he was both ' "actively involved in environmental and conservation issues in the San Bernardino Mountains" ' and ' "familiar with the local San Bernardino attorney market," ' and to his knowledge ' "there [were] no local attorneys in San Bernardino County that regularly practice environmental law on behalf of environmental groups, will do such work on a contingent or reduced rate basis, and possess sufficient expertise . . . to represent . . . the . . . petitioners in this litigation." ' [Citation.] The court explained: 'A plaintiff's threshold showing of impracticability . . . is not onerous [citation], and the [above-described] declaration is sufficient and competent evidence that plaintiffs acted in good faith and hiring qualified counsel in the San Bernardino area was impracticable.' " (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 286.)

19

Because the declarant in *Center for Biological Diversity*, "[t]hrough his experience, . . . was well aware of the local market," "[*u*]*nder th*[*o*]*se particular circumstances*, plaintiffs were not required to produce more detailed evidence, such as evidence of contacts to numerous attorneys who refused the case." (*Center for Biological Diversity v. County of San Bernardino, supra*, 188 Cal.App.4th at p. 619, italics added (*Center for Biological Diversity*).)

In *Environmental Protection, supra,* 190 Cal.App.4th 217, the appellate court affirmed out-of-town rates where local counsel refused to undertake primary representation and stated in a declaration he was "not aware 'of any other local attorney or law firm . . . who would have represented [plaintiffs] in th[e] matter.' " (*Id*. at p. 249; *id.* at p. 250.)

In *Caldera*, the prevailing plaintiff had " 'contacted numerous local lawyers' in the Inland Empire 'all of whom turned [him] down. [He] then expanded [his] search for a lawyer to Los Angeles County,' " where he found representation. (*Caldera, supra*, 48 Cal.App.5th at p. 605.) The appellate court ruled the trial court abused its discretion in rejecting Los Angeles hourly rates, as "there was unrefuted evidence [the prevailing plaintiff] was unable to find an attorney that would take his case in the Inland Empire (the greater San Bernardino and Riverside areas)." (*Id*. at p. 611.)

*Analysis*

The case law is consistent with what the nature of a "good-faith effort" test already suggests: analysis of a litigant's good-faith effort to retain local counsel must be from *that litigant's* vantage point, accepting the litigant *as she is*.

For example, if a plaintiff whose (a) active involvement in a niche activity in a particular geographic area (e.g., environmental and conservation issues in a local mountain range) and (b) familiarity with the local attorney market in that geographic area (c) forms the basis of a declaration that, to that plaintiff's knowledge, (d) there were no qualified local attorneys who would have been able represented her in specific litigation

20

concerning that niche activity in that geographic area, then (e) that declaration establishes the plaintiff "acted in good faith and hiring qualified" counsel in the local area "was impracticable." (*Center for Biological Diversity, supra*, 188 Cal.App.4th at pp. 618; *id.* at p. 619.)

By contrast, an employee who wants to sue her employer for an adverse employment action *must attempt* to retain local counsel before seeking out-of-town counsel. (*Nichols v. City of Taft* (2007) 155 Cal.App.4th 1233, 1238, 1244.) But if those efforts prove unsuccessful, and *especially* if local counsel indicate to plaintiff that she is unlikely to find qualified local counsel to represent her (*Environmental Protection, supra*, 190 Cal.App.4th at pp. 249-250), that employee need demonstrate only that she " 'contacted numerous local lawyers' . . . 'all of whom turned [her] down.' " (*Caldera, supra*, 48 Cal.App.5th at pp. 605; *id.* at pp. 610-611.)

Here, plaintiff provided her own declarations detailing her unsuccessful efforts to obtain counsel in Stockton (three individual lawyers and one law firm) and Sacramento County (two individual lawyers) who all declined to represent her in this case. One Stockton attorney (Davenport) "recommended [she] hire a Bay Area employment lawyer." Bay Area attorney Shepardson refused to take her case on a straight contingency fee basis, and was the only attorney she spoke to who "mentioned a hybrid hourly/contingent fee."

Defendant provides no authority for support of the proposition that, once plaintiff obtained a new understanding of the possibility of "blended rate[s]" from Shepardson (a Bay Area attorney), she had to *return* to local counsel and give them "an opportunity to compete for the case on the same compensation terms as . . . Shepardson," or else forfeit the ability to claim out-of-town rates.

21

Among the declarations that plaintiff submitted from attorneys who declined to represent her, two were from Stockton (San Joaquin County) and two were from Sacramento County.[9]

One of the Sacramento County lawyers plaintiff sought (Pacheco) she knew from her time as a DMV hearing officer. Another Sacramento County lawyer she sought (Penney) previously represented her in workers' compensation matters. One San Joaquin County attorney who declined her case (Rishwain) worked in a building that plaintiff's husband did landscaping for, and had been practicing law since 1995. Another San Joaquin County attorney who declined her case (Davenport) was an experienced civil litigator who confirmed in his declaration what plaintiff said in her declaration—that (given his own assessment of employment lawyers in the local area) he suggested plaintiff seek representation in the Bay Area, not locally.

When explaining its reasoning that plaintiff "made an effort," but not a *good-faith* effort, the trial court wondered aloud why plaintiff "would . . . contact a workers' comp attorney or other attorneys who didn't even do employment law" and paraphrased one of the San Joaquin County attorneys who declined to represent plaintiff as saying "I don't handle employment litigation." [10] In its written ruling, the trial court determined plaintiff

---

**9** The trial court made no distinction between the Sacramento County and San Joaquin County lawyers for purposes of its analysis of plaintiff's "good-faith" efforts to retain local counsel. Nor did defendant argue for such a distinction in the trial court or in its briefing on appeal. Accordingly, for purposes of our analysis of plaintiff's efforts to retain local counsel in this case, we treat the greater Sacramento County and San Joaquin County areas as the relevant geographic locus. (Cf. *Caldera, supra*, 48 Cal.App.5th at pp. 610-611 [treating the "greater San Bernardino and Riverside areas" as the relevant geographic locus for purposes of a good-faith effort to retain local counsel].)

**10** See *Barriga v. 99 Cents Only Stores LLC* (2020) 51 Cal.App.5th 299, 335, footnote 14 (appellate courts may consider a trial court's "analysis offered" and oral statements made at a hearing if those statements are "consistent with the reasoning set forth in the court's final written order and shed[ ] further light on the propriety of that reasoning").

did not make a "reasonable good-faith effort" to retain local counsel, as she "made no more than a cursory effort" to contact local attorneys "who clearly did not handle employment cases." The trial court applied the wrong legal standard, thereby abusing its discretion. (*Paterno v. State of California*, *supra*, 74 Cal.App.4th at p. 85; *Conservatorship of Bower*, *supra*, 247 Cal.App.4th at p. 506.)

From the vantage point of a typical layperson, rather than that of a sophisticated consumer of legal services, it is perfectly understandable that plaintiff sought to retain counsel previously known to her, even if not specializing in employment law. Indeed, a typical layperson cannot be expected to have a full appreciation for the specialization of modern legal practice, including the notion that workers' compensation law is not "employment law." (Cf. *Neel v. Magana, Olney, Levy, Cathcart & Gelfand* (1971) 6 Cal.3d 176, 188 [especially in light of "specializ[ation] within the [legal] profession," a client "cannot be expected" to "ascertain malpractice at the moment of its incidence"].)

And from the vantage point of a typical layperson, it is also understandable that plaintiff sought representation in the Bay Area after an experienced Stockton civil litigator suggested she do so, after declining to represent her. (Cf. *Environmental Protection*, *supra*, 190 Cal.App.4th at p. 249 [affirming out-of-town rates where local counsel refused to undertake primary representation and stated in a declaration he was "not aware 'of any other local attorney or law firm . . . who would have represented [plaintiffs] in th[e] matter' "].)

The trial court also abused its discretion when it relied on its personal knowledge and experience (compounding the error of using the wrong legal standard), explaining: "This judicial officer, who is also the supervising civil judge, has employment cases filed in his department on a regular basis by local attorneys. There are law firms that handle dozens of such cases. This judicial officer finds that it would not have been impracticable to find a local attorney willing and able to handle this case."

The trial court's personal knowledge that employment cases were filed in its department on a regular basis by local attorneys was not a proper basis to reject plaintiff's evidence of her unsuccessful efforts to retain local counsel. Case law permits a trial court to rely on its own knowledge of a legal market in setting a reasonable hourly rate (see, e.g., *Nishiki, supra*, 25 Cal.App.5th at p. 898). A trial court may be (a) familiar with the prevailing hourly rate in the legal market where it sits and (b) in the best position to value services rendered by attorneys in its courtroom. In contrast, a litigant's efforts to retain local counsel occur outside the courtroom, in a myriad of scenarios into which a trial court will have little independent insight.[11]

We conclude the trial court's reasoning reflects an erroneous heightening of the evidentiary hurdle that plaintiff had to clear to justify out-of-town counsel rates. The proper question was "*did* plaintiff make a good-faith effort to obtain local counsel?"; not "*could* plaintiff have obtained local counsel?"

Further, none of defendant's declarations in the record on appeal contain substantial evidence to support the trial court's finding to apply local rates.

The declaration filed in support of the original opposition addressed only the number of claimed attorney hours and costs; not the proper hourly *rate*. The three declarations by San Joaquin County attorneys that defendant filed after the April 2018

---

[11]    For this reason, defendant's argument—that the trial court did not err because it was "in the best position to know the state of the local litigation bar and the result of a good faith effort to find local counsel"—is unpersuasive. It is not the case that a trial court is permitted to consider its own knowledge of the overall "state of the litigation bar" when analyzing *any* aspect of a potential attorney fee award. Rather, and more narrowly, a trial court may consider " 'its own knowledge and familiarity with the legal market' " (*Nishiki, supra*, 25 Cal.App.5th at p. 898) when determining the *economic value of representation* that the trial court directly observes. (See *569 East County Boulevard LLC v. Backcountry Against the Dump, Inc., supra*, 6 Cal.App.5th at p. 437 ["the trial court is in the best position to value the services rendered by the attorneys in his or her courtroom"].)

hearing concerned only the local prevailing hourly rate, and did not address the good faith (or lack thereof) of plaintiff's efforts to retain local counsel. (Cf. *Rey v. Madera Unified School Dist.* (2012) 203 Cal.App.4th 1223, 1241 [the trial court "was faced with *conflicting evidence*," because defendant "submitted declarations from two local attorneys" who "declared that they had the experience, skill and resources to accept such a case and *would have taken this case if asked*"], italics added.)

Accordingly, the trial court abused its discretion when it ruled plaintiff did not make a good-faith effort to retain local counsel. As that determination was the basis of the trial court's decision to reject plaintiff's request for out-of-town counsel rates, we will reverse that decision, and remand for recalculation of Shepardson's fees using out-of-town rates.[12]

III

*Hours*

A. Defendant's Counsel's Time on the Case

Plaintiff contends the trial court "arbitrarily stated [defendant's] time was 'irrelevant' to [an] analysis" of the reasonableness of the number of hours *plaintiff's* counsel spent on the case.

---

[12] Defendant's argument that "there was no prejudicial error," and reliance on our decision in *Early v. Becerra* (2021) 60 Cal.App.5th 726, is unpersuasive. In that case we said: " 'The only proper basis of reversal of the amount of an attorney fees award is if the amount awarded is so large or small that it shocks the conscience and suggests that passion and prejudice influenced the determination.' " (*Id.* at p. 744, quoting *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1134.) But *Akins*'s "shocks the conscience" formulation arises only *after* an appellate court is satisfied that the trial court has *not* made a legal error that undermines the validity of a fee award. (*Akins,* at p. 1134 ["Having concluded that the trial court acted properly as a matter of law . . . we find more generally that the trial court acted properly when making the attorney fees award that it did," as "we cannot conclude that the award of attorney fees shocks the conscience"].) Here, because of the trial court's threshold legal error, the "shocks the conscience" test is inapplicable.

25

After denying as *untimely* plaintiff's November 2018 motion to be permitted to introduce new evidence (including the amount of time defense counsel spent on the matter), the trial court observed that "[e]ven if [it] were to consider the merits of" the untimely pleading, the trial court "would rule that there is nothing relevant included."

Plaintiff does not develop any clear argument that the trial court's threshold untimeliness ruling was error. Accordingly, we need not address plaintiff's contention regarding the trial court's observation how it would have ruled "even if" it considered the new evidence.

B. Presuit Administrative Proceedings

Plaintiff contends the trial court "mistakenly relied [on] *K.I.* . . . to deny fees purely related to administrative proceedings."[13] We conclude the holding of *K.I.* applies here. Because the FEHA's attorney fee provision does not explicitly contemplate recovery of attorney fees incurred at the administrative level, plaintiff is not entitled to those fees.

In *K.I.*, a recipient of public benefits challenged a public agency's decision limiting the number of hours per month of in-home support services he was entitled to. The recipient was *required* to pursue an (unsuccessful) administrative challenge *before* he was able to pursue a (successful) writ of mandate action in the superior court. The trial court awarded attorney fees, but not for work performed in connection with the administrative hearing. (*K.I. v. Wagner, supra*, 225 Cal.App.4th at pp. 1415-1418, 1424 (*K.I.*).)

The appellate court affirmed, explaining the relevant statute authorizing prevailing party attorney fees was "silent regarding the recovery of attorney fees in administrative

---

**13** Plaintiff seeks attorney fees for (i) "preparation for, and appearance at" a one-day administrative hearing regarding plaintiff's WPA claim, which occurred in 2014 and (ii) the mandatory filing of administrative complaints in connection with claims she pursued in her civil action.

proceedings," and "[c]ourts do not generally presume that the statutory phrase 'reasonable attorney fees' includes fees incurred at an administrative hearing. . . . Instead, when the Legislature wants to permit the recovery of expenses or attorney fees for administrative hearings, it has done so explicitly. [Citations.]" (*K.I., supra*, 225 Cal.App.4th at p. 1423.)

Here, as in *K.I.*, while exhaustion of administrative remedies was required before plaintiff filed her civil action (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 931), the relevant statute— Government Code section 12965, subdivision (c)— does not explicitly provide for attorney fees for time spent pursuing administrative remedies. Therefore, we conclude plaintiff is not entitled to attorney fees for time spent on presuit administrative proceedings.[14]

C. Travel Time for Court Conferences

Plaintiff contends the trial court abused its discretion by disallowing some attorney travel time. We disagree.

Plaintiff asserts two cases "have rejected the trial court's finding that the attorney should have appeared by telephone": *Roe v. Halbig* (2018) 29 Cal.App.5th 286 (*Roe*) and *MBNA America Bank, N.A. v. Gorman, supra*, 147 Cal.App.4th Supp. 1. Not so. *Roe* states that "attorney fees for travel hours *may* be awarded *if* the court determines they were reasonably incurred." (*Roe,* at p. 312, italics added.) *MBNA America Bank, N.A. v. Gorman* states that the trial court "had a reasonable basis to find that the [number of attorney fees] hours" it awarded "was time reasonably spent on th[e] matter," including "preparation for and attending hearings." (*MBNA America Bank,* at pp. 12-13.)

---

**14** To the extent plaintiff was entitled to attorney fees under Code of Civil Procedure section 1021.5, she may have been entitled to fees incurred at the administrative level. But here, the trial court ruled plaintiff was not entitled to attorney fees under Code of Civil Procedure section 1021.5. That ruling, along with the holding of *K.I.,* precludes plaintiff's recovery of attorney fees incurred at the administrative level.

Neither case, by itself, and without further argument from plaintiff, compels the conclusion the trial court abused its discretion when it declined to order recovery for Shepardson's hours spent on "travel to and from routine case management conferences which could have been handled more economically by Court Call." (Cf. *Gorman v. Tassajara Development Corp*. (2009) 178 Cal.App.4th 44, 101 (*Gorman*) ["[a] reduced award might be fully justified by a general observation that an attorney overlitigated a case," especially when a trial court is "confronted with hundreds of pages of legal bills"].)

Plaintiff's remaining contentions on this issue are forfeited because they are not supported by citations to the record.

D.  Clerical Work

Citing numerous federal cases, including *Moreno v. City of Sacramento* (9th Cir. 2008) 534 F.3d 1106, plaintiff contends the trial court abused its discretion by disallowing attorney fees for clerical work.  But this federal authority "is not based on principles applied in California." (*Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240, 250.)

As plaintiff observes, "[s]ecretarial and paralegal services are includable in fee awards." (See *Salton Bay Marina, Inc. v. Imperial Irrig. List*. (1985) 172 Cal.App.3d 914, 951.)  But California authority permits a trial court to disallow attorney rates for clerical work.  (See *Save Our Uniquely Rural Community Environment v. County of San Bernardino* (2015) 235 Cal.App.4th 1179, 1186-1187 [the trial court "could reasonably have determined that billing at partner rates for" "some work that appears . . . to be clerical" was "excessive"].)

Plaintiff contends the trial court's "outright denial" of recovery for ministerial tasks performed by Shepardson was an abuse of discretion because "somebody had to do the work."  If plaintiff wanted recovery at "[s]ecretarial [or] paralegal" rates, she should have claimed the work properly.  (See *Mountjoy v. Bank of America, N.A.* (2016)

28

245 Cal.App.4th 266, 280 ["It is the obligation of the party (and attorney) seeking the fee award 'to prune the fee request to comply with the law,' and the party (and attorney) cannot 'transfer that responsibility onto the trial court.' "].)

E. Client Conferences

Plaintiff appears to contend the trial court abused its discretion by disallowing recovery for attorney time spent in "conferences with" plaintiff, who "was a de facto paralegal or even quasi second chair attorney." Other than the trial court's ruling disallowing attorney fees for "[c]onferring with a client about newspaper articles of general interest," it is unclear what ruling plaintiff might be referring to.

Thus, this claim is forfeited because it not supported with citations to the record in the opening brief.[15]

F. Duplication

Citing *Rogel v. Lynwood Redevelopment Agency* (2011) 194 Cal.App.4th 1319, 1330, plaintiff contends the trial court abused its discretion by making "general findings of duplication" because "general statements of 'excessiveness' or 'duplication' are not sufficient . . . ." We do not read *Rogel* as standing for the proposition asserted. In any event, we agree with *Gorman* that "a reduced award might be fully justified by a general observation that an attorney overlitigated a case," especially when a trial court is "confronted with hundreds of pages of legal bills." (*Gorman*, *supra*, 178 Cal.App.4th at p. 101.) Such was the case here.

G. Public Benefit

Defendant appears to contend that, because her action "benefit[ed] [the] public interest," the trial court abused its discretion in disallowing recovery for some of Shepardson's time. Plaintiff asserts her case (a) "resulted in the discovery of two

---

[15] Argument on this issue in plaintiff's reply brief with citations to the record comes too late and is forfeited.

different porn-rings," (b) "caused the[ ] departures" of defendant's senior leadership, (c) "caused" defendant to create "a new reporting line for sexual harassment," and (d) "saved the taxpayers tens of millions of dollars" and "made our state computer systems less susceptible to cyberattacks from . . . hostile foreign agents . . . ."

This contention is forfeited because it is unsupported by citations to the record. Further, we note that if we were to consider the merits of this contention, we would reject it, as the public benefit of litigation is irrelevant to the calculation of a lodestar figure. (Cf. *Mountjoy v. Bank of America, N.A.*, *supra*, 245 Cal.App.4th at p. 274 ["the factors the [plaintiffs] contend the trial court ignored are to be taken into account in deciding whether to apply a multiplier to the lodestar figure," not calculation of the lodestar per se].)

Accordingly, we conclude the trial court did not abuse its discretion in its determination of the reasonable amount of time that Shepardson spent on the case.

IV

*Lodestar Multiplier*

Plaintiff contends the trial court abused its discretion "by failing to properly consider the factors for a lodestar multiple." Specifically, plaintiff argues the trial court erred regarding: the "huge contingent fee risk" (underscoring & boldface omitted); the case's "benefit[ ] [to the] public interest" (boldface omitted); Shepardson's "missed work opportunities" (boldface omitted); "the novelty and difficulty of the questions involved and skill[ ] displayed" (boldface omitted); Shepardson's "preparation and . . . [ ]organization." We conclude there was no abuse of discretion.

A. Contingent Fee Risk

Regarding the contingent fee risk, plaintiff argues "[t]here were long odds against her prevailing. The long[er] the odds, on a meritorious civil rights case, the greater the multiplier should be." The trial court considered this factor, when it recognized *both* (i) that "[t]aking the case on a contingent fee basis [was] . . . significant" *and* (ii) that this

30

"risk . . . was substantially reduced" because Shepardson "did not take th[e] case solely on a contingency basis" but also "was to be paid an hourly rate." There was no abuse of discretion.

## B. Public Interest Benefit

Regarding the benefit to the public interest from her case, plaintiff argues that her "[p]rivate enforcement" of defendant's "obligat[ions] . . . not [to] engage in improper government activity" "was in the public interest, as discussed" *elsewhere* in her opening brief. It appears plaintiff is referring to her separate claim the trial court erred in ruling plaintiff was not entitled to recover fees pursuant to Code of Civil Procedure section 1021.5. This argument regarding the lodestar multiplier is forfeited. In any event, we agree with the trial court's denial of fees under Code of Civil Procedure section 1021.5.

## C. Missed Work Opportunities

Plaintiff argues the trial court "incorrectly reasoned to the false conclusion . . . Shepardson did not miss other work opportunities because of this case," because "by taking this case, [Shepardson] naturally missed . . . other opportunities."

The trial court ruled Shepardson "failed to substantiate that representation in this case . . . substantially precluded other work," as the assertion was "not supported by the facts." Plaintiff provides no citation to the record in support of the multiple assertions she makes in connection with this assignment of error on appeal. Thus, this contention is forfeited.[16]

---

[16] Accordingly, we deny as moot defendant's request for judicial notice of various court dockets (in order to show that Shepardson "had the ability to take other cases while this action was pending").

D. Novelty and Difficulty of the Questions Involved

"The trial court incorrectly stated the issues in this case are not new," plaintiff contends. Plaintiff's argument on this point, replete with factual assertions lacking citations to the record, is forfeited.

E. Skill Displayed by Counsel

Plaintiff contends the trial court "incorrectly opined that . . . Shepardson's skills fell far short of 'exceptional representation.' " For support of this contention, plaintiff observes that Shepardson "persuaded" the trial court on a point of law and that "[a]ll other attorneys . . . rejected the case."

Those observations do not establish an abuse of discretion by the trial court, who recognized that Shepardson, in "obtain[ing] a positive result . . . for [p]laintiff," "displayed . . . 'comparable' rather than exceptional skills in relation to other attorneys with similar experience."

F. Lack of Preparation and Disorganization

Plaintiff argues the trial court "incorrectly concluded that . . . Shepardson displayed a lack of preparation and was disorganized . . . ." For support of this contention, plaintiff "refer[s] [us] to the entire [clerk's] and report[er's] transcripts -- they do not support the trial court's finding." "It is not the function of this court to comb the record looking for the evidence or absence of evidence to support defendant['s] argument." (*People ex rel. Reisig v. Acuna* (2010) 182 Cal.App.4th 866, 879.) Thus, this contention is forfeited.

Accordingly, we conclude the trial court did not abuse its discretion in choosing a multiplier of 1.2.

V

*Code of Civil Procedure Section 1021.5*

The trial court ruled plaintiff did not meet her burden of "proving a significant benefit . . . for members of the public," as "[a]ll damages were requested for [p]laintiff

32

alone," and there "was no claim for injunctive relief which may have conferred a benefit on the general public."

Plaintiff argues she "should recover all her reasonably incurred fees pursuant to Code of Civil Procedure section 1021.5," because her "action resulted in the enforcement of an important public right affecting the public interest." But plaintiff's argument does not address the trial court's ruling in any way. To the extent the claim is not forfeited for failure to make adequate argument, it lacks merit.

"Section 1021.5 permits a trial court to award attorney's fees to a successful party in any action that '(1) enforced an important public right, (2) conferred a significant public benefit, and (3) is of a type that private enforcement was necessary, and the financial burden justifies subsidizing the successful party's attorneys.' [Citation.] 'Although the statute is phrased in permissive terms, a court's discretion to deny attorney's fees to a party that meets the statutory requirements of section 1021.5 is limited. [Citation.] Unless special circumstances would render an award of section 1021.5 fees unjust, fees must be awarded under the statute where the statutory criteria are met.' [Citation.]" (*Burgess v. Coronado Unified School Dist.* (2020) 59 Cal.App.5th 1, 7, italics & fn. omitted.)

The trial court's reasoning was sound. " '[T]he public always has a significant interest in seeing that legal strictures are properly enforced and thus, in a real sense, the public always derives a "benefit" when illegal private or public conduct is rectified. Both the statutory language ("significant benefit") and prior case law, however, indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation. We believe rather that the Legislature contemplated that in adjudicating a motion for attorney fees under section 1021.5, a trial court would determine the significance of the benefit, as well as *the size of the class receiving benefit*, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case.' [Citation.] [¶] In other words, the significant benefit

33

requirement of section 1021.5 requires more than a mere statutory violation." (*Burgess v. Coronado Unified School Dist.*, *supra*, 59 Cal.App.5th at p. 9, italics omitted & added.)

Here, the trial court reasonably determined the class of one (plaintiff) benefitting from plaintiff's action militated against an award pursuant to Code of Civil Procedure section 1021.5.[17]

## VI

### *Costs*

A. Legal Backdrop

"The right to recover costs of suit is statutory. [Citation.] [Code of Civil Procedure] [s]ection 1032, subdivision (b) 'guarantees prevailing parties in civil litigation awards of the costs expended in the litigation.' [Citation.] [Code of Civil Procedure] [s]ection 1033.5 imposes limits on the recoverable costs a prevailing party may seek, listing items that are allowable and not allowable as costs under the statute. [Citations.] Specifically, section 1033.5, subdivision (a) specifies items that are expressly allowable as costs, and section 1033.5, subdivision (b) lists items for which costs may not be recovered. ([Code Civ. Proc.,] § 1033.5, subds. (a) & (b).) Section 1033.5 further provides that costs not specifically permitted under subdivision (a) or foreclosed by subdivision (b) 'may be allowed or denied in the court's discretion.' ([Code Civ. Proc.,] § 1033.5, subd. (c)(4).) Finally, section 1033.5 requires that the costs awarded, whether expressly allowed under subdivision (a) or awardable in the court's discretion under subdivision (c), must be 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation' ([Code Civ. Proc.,] § 1033.5, subd. (c)(2)) and also be 'reasonable in amount' [citations].

---

**17** We disregard exhibits to the opening brief that plaintiff cites in support of her contentions that her case conferred a significant public benefit, because plaintiff has not demonstrated that those materials are part of the record on appeal.

34

" 'In ruling upon a motion to tax costs, the trial court's first determination is whether the statute expressly allows the particular item and whether it appears proper on its face. "If so, the burden is on the objecting party to show [the costs] to be unnecessary or unreasonable." [Citation.] Where costs are not expressly allowed by the statute, the burden is on the party claiming the costs to show that the charges were reasonable and necessary.' [Citation.]

"A costs award is generally reviewed on appeal for abuse of discretion. [Citation.] 'Whether a cost item was reasonably necessary to the litigation presents a question of fact for the trial court and its decision is reviewed for abuse of discretion. [Citation.] However, because the right to costs is governed strictly by statute [citation] a court has no discretion to award costs not statutorily authorized.' [Citation.] '[W]hen the issue to be determined is whether the criteria for an award of costs have been satisfied, and that issue requires statutory construction, it presents a question of law requiring de novo review.' [Citation.]" (*Rozanova v. Uribe* (2021) 68 Cal.App.5th 392, 399.)

B. The Ruling

In its January 2019 order, the trial court explained which costs plaintiff was entitled to recover pursuant to Code of Civil Procedure section 1033.5 including: "filing, motion, and jury fees"; "taking, video recording, and transcribing necessary depositions"; "travel expenses to attend depositions"; "service of process"; and "court reporter fees as established by statute." (See *id.*, subd. (a)(1), (a)(3)(A), (a)(3)(C), (a)(4), (a)(11).) For all those costs, the trial court ruled "[t]hese cost items are allowed." Regarding the court reporter fees, the trial court explained that it had "received the declaration of Susan Portale who has charged as court reporter fees the sum of $20,342.00. These cost items are allowed."

Regarding "trial transcripts of court proceedings *not* ordered by the [trial] court" (italics added)—and though Code of Civil Procedure section 1033.5, subdivision (a)(9) contemplates only "[t]ranscripts of court proceedings *ordered* by the court" (italics

35

added)—the trial court ruled those costs "were reasonably incurred in this case because the transcripts were used to impeach witnesses and to clarify rulings by the [trial] court. The court will allow costs of transcript fees in the amount of $15,426.00."

The trial court "exercise[d] its discretion" under Code of Civil Procedure section 1033.5, subdivision (a)(16) (to allow costs for any "other item that is required to be awarded to the prevailing party pursuant to statute as an incident to prevailing in the action at trial") by "award[ing] fees incurred by [p]laintiff for expert witnesses Jan Duffy, Dr. Nacouzzi and Dr. Carey. The fee for HR expert DeGrande will be reduced from $4,000 to $2,000 because the court [found] it . . . partially duplicative."

Pursuant to Code of Civil Procedure section 1033.5, subdivision (b)(3), the trial court did *not* award costs for "postage, telephone, and photocopying charges." And pursuant to subdivision (b)(4) of the statute, the trial court disallowed costs for "investigation of jurors or in preparation for voir dire," "including the fee for Truman and Associates."

The trial court further ruled: "Attorney's fees for Dan Siegel are not allowed as costs. [¶] Costs related to rush fees for Legal Capital Process are not allowed because the court . . . believes that such rush fees are not reasonably necessary . . . . [¶] Fees for duplicate billings of the same item are not allowable as costs. [¶] The item for 'CDR Rodrigues Depo' on 2/3/16 is not allowed in the [trial] court['s] discretion because no receipt is found for this item and there is insufficient evidence to support this item."

C. Reporter Fees and Transcript Fees

1. Additional Background

In February 2018, Susan Portale, a certified court reporter, filed an amended declaration explaining that both parties failed to pay her for her services at trial. Portale explained defendant owed her: (a) $15,200 for her 32 days of reporting (at a rate of $475 per day, with each party responsible for one-half of Portale's rate of $950 per day); (b) $5,142 in "Realtime" charges of "$1.00 per page per side" (with each party

responsible for one-half the total amount) ; and (c) $7,713 for the trial court's "download[ ] [of] the Realtime transcripts" (one-half the total amount of $15,426).

Regarding plaintiff's counsel, Shepardson, Portale "request[ed] the [c]ourt order the State of California to directly reimburse [her] . . . out of any [j]udgment payable to the [p]laintiff the sum of $11,878.00 because [she] [did] not believe [Shepardson] would ever pay [her]."

At the April 2018 hearing where the trial court and the parties discussed attorney fees, they also discussed costs. Regarding Portale's unpaid fees, the trial court informed the parties it had "allowed [Portale] to intervene," and she was in attendance. Portale told the trial court that she "received an e-mail early th[e] morning" of the hearing "that a check was left" for her at "[her] office or at a neighbor' s office" for the "outstanding amounts owed to [her]."

Apparently, that check was from plaintiff.

The trial court queried: "And there was $11,878. You think that would satisfy your claim?" Portale replied, "I do think so, yes."

Shepardson explained that "from the plaintiff's point of view, we paid" what plaintiff owed to Portale "as a practical matter. So we still dispute that, we protest it, but we paid it for purposes of this case, and that's our position."

2. Analysis

Plaintiff contends the trial court abused its discretion by "only award[ing] reporter fees of $20,342 and transcript fees of $15,426.00 for a total of $35,768," even though plaintiff "paid . . . Portale . . . $42,910.43" "for reporting and transcripts."

" 'It is not the absence of an explanation by the trial court that calls [an] award [of fees and costs] into question, but its inability to be explained . . . .' " (*Roe, supra*, 29 Cal.App.5th at p. 312.) Thus, if " 'there is [an] apparent reasonable basis for the award in the record,' " an appellate court should affirm. (*Ibid.*)

37

Here, there is an apparent reasonable basis for the reporter fee and transcript fee awards: $15,200 (plaintiff's 50 percent share of the total of amount of "daily" reporter fees) plus $5,142 (plaintiff's 50 percent share of the "Realtime" charges) equals $20,342 (the amount the trial court awarded for "reporter fees").  And the transcript fee award of $15,426 was the combined amount Portale claimed the parties owed her for "[c]ourt download of daily transcripts."

D.  Rodrigues Deposition

Plaintiff argues the trial court abused its discretion by disallowing costs for the Rodrigues deposition, because plaintiff "did provide the documentation for" it. Defendant argues the opening brief's citations to the record do not contain the documentation plaintiff asserts.  In her reply brief, plaintiff provides a different citation to the record.

Because plaintiff failed to support this argument with necessary citations to the record in her opening brief, we deem this argument forfeited.

E.  HR Expert DeGrande

Plaintiff maintains the trial court "incorrectly found . . . DeGrande's fee to be duplicative without stating why. . . .  Her function was different than HR [e]xpert Duffy, who testified and was retained after DeGrande."  Defendant argues the trial court properly determined defendant "should pay for only half of a duplicative expert that [plaintiff]" chose not to call to the stand.

We agree with defendant that such a determination is within a trial court's discretion.  (Code Civ. Proc., § 1033.5, subd. (c)(2) ["Allowable costs shall be reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation."].)

F.  Attorney Dan Siegel

"The trial court erred," plaintiff contends, "in disallowing attorney Siegel's $950 in fees," due to "the incorrect premise that fees are not allowed as costs."  Plaintiff

38

correctly observes that Code of Civil Procedure section 1033.5, subdivision (a)(10) contemplates attorney fees as " 'allowable costs.' " (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 606 ["recoverable litigation costs do include attorney fees, but only when the party entitled to costs has a legal basis, independent of the cost statutes and grounded in an agreement, statute, or other law, upon which to claim recovery of attorney fees"].)

But in its order, the trial court did not articulate a broad premise that attorney fees can never be allowed as costs. Rather, it said attorney fees "*for Dan Siegel* are not allowed as costs." (Italics added.) Given the standard of appellate review, we will not presume the trial court made a legal error in making that determination. Rather, we will presume the trial court disallowed Siegel's fees as a factual matter. (See *Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.)

Accordingly, we reject this claim.

G. Financial Expert Kevin Lagorio

Plaintiff says it "appears" the trial court "failed to award the expert fees for . . . Kevin Lagorio who charged $4,000." But given a trial court's *discretion* to award "reasonably necessary" expert witness fees (Code Civ. Proc., § 1033.5, subd. (c)(2); Gov. Code, § 12965, subd. (c)), this argument is inadequate to demonstrate reversible error. (*Yield Dynamics, Inc. v. TEA Systems Corp.*, *supra*, 154 Cal.App.4th at p. 557 ["an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim"].)

H. Discrepancies

Plaintiff contends that the "differential amount between what [she] claimed as costs . . . and what the court allowed . . . is *largely unexplained* by the court's order." (Italics added.)

But as we have observed, the absence of an explanation does not demonstrate reversible error when there is an apparent reasonable basis for an award. Thus, this argument is inadequate to demonstrate reversible error.

Plaintiff also contends the sum of costs approved by the trial court is tens of thousands of dollars more than the total amount of $117,488.60 that the trial court articulated. Defendant does not address this contention in its briefing.

Though the trial court showed its math when it calculated attorney fees in this case (articulating awards to five different individuals who worked different numbers of hours at three different hourly rates), it did not do so regarding costs, ruling on multiple items simply that "[t]hese costs items are allowed." Accordingly, plaintiff's contention appears to have some merit.

In *Ramos v. Countrywide Home Loans, Inc.* (2000) 82 Cal.App.4th 615, the appellate court reversed an order awarding attorney fees and costs after providing the following observation that is particularly apt here: "[I]t is both parties' task on appeal to assist the court in its review of the record, by pointing out those portions of the record that support their respective positions on the trial court's exercise of discretion in deciding the issue presented. Because that task was performed in the appellate briefs we have received in a somewhat cursory fashion . . . , we have had some difficulty in evaluating the discretionary ruling before us. . . . Moreover, our task has been complicated by the terse nature of the trial court's ruling itself." (*Id.* at p. 624.)

Likewise here, in light of the trial court's terse articulation of costs allowed, and defendant's silence on the issue of the potential discrepancy between the *actual* sum of all costs approved by the trial court and the trial court's *articulation* of that sum, we reverse the trial court's articulation of the total costs awarded, and remand for the trial court to rearticulate the sum of all costs approved in its January 2019 order.

## DISPOSITION

Regarding the reasonable hours plaintiff's counsel Shepardson spent on the case, and the lodestar multiplier, the order appealed from is affirmed. Regarding the reasonable hourly rate for Shepardson, the order appealed from is reversed and the matter is remanded for recalculation of the fee award using an out-of-town rate that the trial

40

court determines is reasonable.  Regarding costs, the order appealed from is affirmed in all respects, except for the trial court's articulation of the sum of the costs awarded.  That aspect of the award is reversed and remanded to the trial court for rearticulation of the actual sum of the costs it awarded in January 2019.  The parties shall bear their own costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)


            /s/
            HOCH, J.


We concur:


 /s/
ROBIE, Acting P. J.


 /s/
HULL, J.